and I understand that Mr. Pitaro is on the telephone, is that correct? Yes, Your Honor. Are you still in trial? No, it ended yesterday, Judge. All right. As you know, when you argue on the telephone, sometimes there is a slight delay between our trying to get a question in edgewise and your trying to get a question in edgewise. So you'll have to just be somewhat alert to that. Okay. And you'll have to watch your own time, but I'm sure you want to save some time for rebuttal. I'll give you kind of a two-minute warning if that's agreeable. That would be fine, thank you. All right. Please proceed. Yes. If you would please the court, this is an appeal from a conditional plea under 922G, which was possession of a firearm by a person convicted of a misdemeanor domestic violence in state court. This conviction was set aside by action based upon the following. That the individual, Mr. Epps or Mr. Weiss, affirmatively asked his attorney in the state court proceeding if a plea would have an effect upon his right to bear arms or possess a gun. He was affirmatively told that it did not. He entered the plea, and then consequently this case came about. We went into state court, and we brought that to the attention of the state court judge that the plea was not voluntarily made due to the ineffectiveness of counsel, the misrepresentation as to the law. And the state court judge allowed him to withdraw the plea, reinstitute the state charges. Those charges were subsequently then dismissed. Now, the government appears in their argument to say that this case is governed by the Ninth Circuit case of Padilla and United States Supreme Court case of Lewis. They are wrong. It is not. United States Supreme Court in Lewis said that the reason a conviction could be used, even if it was set aside or infirm in some way, was because the language was unambiguous. And there were no modifiers under the statute that they were citing. However, under the provision of which Mr. Epps was convicted of this conditional plea, there are in fact are modifiers. The first modifier that is important here is that the person was represented by counsel. What happened in this case was Mr. Epps, although represented by counsel, was represented by ineffective counsel as the state court found. Being represented by ineffective counsel is, in our opinion, the equivalent of not having counsel at all. May I interrupt just to ask a question? Assuming we agree with you that this isn't a collateral attack, that there would be not only a right to counsel or but effective counsel, and even assuming there was a constitutional right for purposes of discussion, where do we end up here where there is no evidence from Mr. Weiss in the form of an affidavit or some other evidence in the record that says he wouldn't have pled guilty but for this advice? All right. Well, I think the answer is quite evident, that the person, upon getting the advice, in fact, then did plead guilty. And we had the affidavit of the attorney. What I'd like to do is ---- No, no, wait. Okay, let's stop right there because that's true in every ineffective assistance of counsel case where certain things happen and then they say, and there was a guilty plea, therefore it must have been a cause and effect. But we haven't accepted that in normal ineffective assistance cases. We have his lawyer's affidavit. Do we have anything from him? Well, I think all throughout the moving papers we had that. If I could, maybe I think there's a case that answers this. The government set up the Frye case, and we got a guess today that they want to supplement their brief with the Frye case. And what I'd like to point out is that we then supplemented late yesterday with a case called United States v. Kwan, which was a Ninth Circuit case, 407, Fed Third, 2005 case, where the actual issue came up. And if I could just quickly quote because it gets to the point, they say, however, Frye is not dispositive here where counsel did not merely refrain from advising Kwan regarding the immigration consequences of the conviction, but instead responded to Kwan's specific inquiries regarding the immigration consequences, et cetera. This court then went on that it may have misled him out of ignorance is no excuse, citing ABA standards, went on and said that it is obviously objectively unreasonable. And I'd like to point out that the conclusion of this court in Kwan was, let me just read it here if I could. It says, and this was the second prong of whether he would have pled guilty, that, and I'm quoting, that Kwan asked counsel about the immigration consequences of pleading guilty before agreeing to do so demonstrates clearly placed particular emphasis on immigration consequences and deciding whether or not to plead guilty using that in and of itself is that this was in Kwan and this court ruled that his claim of ineffective assistance to counsel was correct and it was fundamental error. So I believe that we in fact. I think, Mr. Pato, the question that Judge McCune, this is Judge Bailiff, was directing at you is what we usually call a second prong of Strickland. You're claiming ineffective assistance of counsel. Let's suppose that counsel did render deficient performance. Where is the proof that Mr. Epps, also known as Wise, would not have pleaded guilty to the charge of domestic violence, but for the representation that it would not prejudice his ability to bear arms? Where in the record is there any evidence from which we can find that prong of Strickland is made out? I think there's two things. One, of course, I said at Kwan, but let me say something that's the most important thing. The most important fact is he in fact went in, as we pointed out in the brief and submitted there, he actually went into the state court and said, I move to withdraw my plea because I was affirmatively misled by my prior attorney, and the state court judge agreed with him and allowed him to withdraw the plea. So rather than say, well, would he or wouldn't he have done something, which is the normal thing the way it comes out in this case, we actually had him specifically withdrawing his plea. Did he do it under oath before the state judge? We did it by motion, Your Honor. This is Judge Seiler. What makes this prior conviction of a misdemeanor different from a prior felony conviction under this law? Under a prior felony conviction, you just have to have counsel. You can't go looking to see whether counsel was effective, can you? It's the best case for it if you can. Yes, and that is that under the section here that makes this case so totally different than Lewis and Padilla is the modifiers in 18 United States Code 921A33B1, where it modifies the conviction. It says that a conviction, even if it was valid for other purposes, a conviction cannot be used unless the person was represented by counsel. But that's true about a felony conviction except it's not written into the statute, right? It's written into the law by the courts. No, I guess that isn't true by virtue of the fact that Lewis was, in fact, the case where they held that. What the Supreme Court said in Lewis is that there is no modifier in the statute of conviction under the 922G1. What we're saying is that under the 922G9, that they, in fact, do modify the term conviction of what it is and limit the type of conviction that, in fact, can be used. And in the Quine case, they said, the court said, that the misrepresentation is, in fact, the fundamental error. And in that case, they so held it was a clear and noble. That's a higher standard for a misdemeanor conviction than for a regular felony conviction? No, what it is is the statute, I think, recognized the fact that what would normally be a minor conviction, for example, a minor conviction that you may not even be entitled to a jury trial, can get extrapolated into a federal felony. And therefore, the legislature and the Congress, what they did is they narrowed down the type of conviction that you could use. And our position is clearly this, is we don't buy into the potted plant theory of representation. I don't think this court does. They did it in Quine. And that is, it is different when an attorney keeps his mouth shut, but when he tells you something that is affirmatively wrong and you plead guilty based upon that, that you cannot use that. And as we say, we think the modifier, you have to look under 922, I'm sorry, 921A33, because that is, in fact, where they list the modifiers. And it is the only place within that statute where they make those requirements. We'll hear from the government now. Thank you. Good morning. May it please the Court. Elizabeth Olson on behalf of the United States. I'll jump right to this issue of ineffective assistance of counsel. Speak up a little bit. I'm sorry, Judge. I'll jump right to the issue of ineffective assistance of counsel because I think Judge McEwen hit the nail on the head, and that is that there's simply no evidence in this record that the defendant had ineffective assistance of counsel. Under Strickland v. Washington, there's a requirement that the defendant establish both that the counsel's deficient was the counsel's performance was deficient, and also that he was prejudiced by that deficient performance. Well, what about what Mr. Patero pointed out, that there's pretty good evidence that he was prejudiced, that when he found out what the effect of the prior plea was, that he went into state court, made his case that the guilty plea was not knowingly and intelligently entered because of the fact that he wasn't advised of its collateral effect. The state court agreed with him. And why can't we look to that? Well, the state court did allow him to withdraw his guilty plea as unknowing and involuntary, which is a little bit curious because even under Nevada law, a defendant's ignorance of the collateral consequences of a guilty plea doesn't render that guilty plea unknowing or involuntary. The state court judge, and the only document that's in the record is the order granting the defendant's motion, makes no findings of fact or conclusions of law with respect to ineffective assistance. Is there anything in the record regarding his basis for the motion? The motion is not in the record before this Court. I don't have a copy of it. So all we have is a state court withdrawal of the plea. Right. Permission to withdraw the plea. Right. Three years after the fact, they went back into state court. The state court allowed him to withdraw that motion. But there's nothing in the record. There's no finding of ineffective assistance. There's no finding of ---- Well, there was a finding that he didn't he hadn't made the plea knowingly or intelligently. Exactly. Exactly. But there's no ---- What facts show that he ---- if he didn't make it knowingly and intelligently, what didn't he know and what wasn't he intelligent about other than the collateral effects of the plea? Well, exactly. And that's why I say it's a curious decision. Well, exactly. Then he's shown prejudice. Well, he's ---- he has shown that he didn't know. I mean, apparently the district court accepted that the defendant did not know the collateral consequence of this guilty plea. Okay. Now, under and ---- Doesn't that allow the implication that had he known, he wouldn't have pleaded? The defendant still has the obligation to prove prejudice. And in ---- and there's nothing in this record before this Court to establish this. Now, he assumes that the district ---- What about his lawyer's affidavit? Well, what his lawyer's affidavit says is, I recall that he asked me whether the domestic violence conviction would preclude him from possessing a firearm. I may have ---- I believe I said ---- I answered in the negative. My recollection is vague, but I believe he was under the impression that he could have a firearm. Now, as this Court said, obviously in the federal case, a defendant's presumption that he was precluded from having a firearm doesn't negate prosecution under the federal statute, right? But in any event, even if ---- so even if Mr. Buchanan misadvised the defendant in state court, first of all, this Court has never said that an attorney's misrepresentation of a collateral consequence, with the exception of deportation. And the Kwan case that Mr. Potaro sent yesterday was specifically about ---- was about the deportation consequence of a plea to an aggravated felony. And in that case, as you mentioned, this Court found both deficient performance and found prejudice. Now, when you go back to this case, there's no evidence in the record that the defendant would not have pleaded guilty. And in fact, in this case, in the State case, the defendant was facing very serious charges, second-degree kidnapping, battery with a deadly weapon, dissuading a victim from testifying, and second offense, domestic violence. Mr. ---- You're talking about the State case. The State case here. Mr. Buchanan ---- The one where he put the pistol in the woman's mouth. Yes. The charge was that he put a gun in his girlfriend's mouth, hit her upside the head with an ashtray, held her against her will, and then dissuaded her from testifying against him. Now, Mr. Buchanan negotiated the dismissal of all of those charges in exchange for a single misdemeanor with two days in jail and a $315 fine. Now, the defendant is here is saying, claiming three years later, oh, but if I had known that I wouldn't be able to have a gun, I would never have pled guilty. That suggests, first of all, there's no evidence that the State prosecutor would have allowed him to plead to something else that would have let him have a gun. I mean, I think that the State prosecutor came down as much as he could, or he could have gone to trial on all of those charges when the victim was right there. I mean, it's true three years later, when the State court allowed the plea to be withdrawn, the government couldn't prosecute the case, they couldn't locate the victim anymore, and the case ended up being dismissed. But at the time, there's just simply no evidence in the record that the defendant was prejudiced because either that he wouldn't have agreed to plead guilty or that the government would have agreed to let him plead to a different charge. If there is something troubling, though, about the fact that the State court permitted withdrawal because it wasn't knowing involuntary, and then this entire prosecution is predicated on that conviction, don't you find that troubling? It is. But mostly because I'm very curious about why the State court did that. I mean, I'd like to have more information, and unfortunately, there's nothing more in the record. Under Federal law, and my understanding is under Nevada State law, ignorance of the collateral consequences does not render a plea unknowing or involuntary. And so I'm not really sure. I mean, there's, you know, we don't know how it is that the district court went about making that decision. And you're saying that the only Federal cases on collateral consequences in terms of being ineffective assistance relate to an immigration deportation or other remedies? And the case, the United States v. Kwan, which is the Ninth Circuit case, which is the only case that I was able to find where a misrepresentation of a collateral consequence was considered to be deficient performance, that relied on the Second Circuit case in the United States v. Cuoto, which is a long case that went into great length about whether deportation is really a collateral consequence anymore, or whether it should now be considered a direct consequence because the current law makes deportation virtually automatic for those convicted of an aggravated felony. And the Second Circuit went on about how important that is, and maybe it's to the point now where a defense attorney is obligated to advise his client of this, you know, or even failure to mention it because it's such an important consequence. The Second Circuit didn't go so far as to deem it a direct consequence, but said that it's somewhat sui generis. You know, it is such an important consequence, even if it's collateral, that we're going to say that an affirmative misrepresentation constitutes deficient performance. But neither the Second Circuit nor this circuit has ever said that misrepresentation of any collateral consequence constitutes deficient performance. And I don't think there's any reason to go here, in particular because even if you assume arguendo that it is deficient performance, the defendant still has to come forward and establish prejudice. And he simply can't do that unrestricted. Kagan. Do you see a difference between failure to advise and false advisement? There is. And what this court has said is, I mean, this court has used the phrase gross mischaracterization. A gross mischaracterization of the consequences of a plea can be considered deficient performance. And they've distinguished, or you've distinguished, between an attorney who misestimates the likely sentence, you know, calculates the guideline range and says you're probably looking at this, and then the sentence ends up being significantly higher. There is a point at which, and there isn't really a clear line anywhere, but there's a point at which when what you're talking about is a gross mischaracterization, that that can constitute deficient performance. But this court, or any other court, has never applied that gross mischaracterization to a collateral consequence of a guilty plea, since the defense attorney is under no obligation to advise the defendant of collateral consequences. Now, in this case, yes, if the defendant did, in fact, ask his attorney, is this going to preclude me from owning a firearm, and if the attorney, in fact, said no, it isn't, and the record isn't clear on that. I mean, the affidavit is very ambiguous. My recollection is fuzzy, but I believe I might have said no. Even if that's true, you're still dealing with a relatively, relatively insignificant, as opposed to something like deportation consequence, and it just simply doesn't meet that standard. Thank you. You have kind of used up all your time, but I'm going to give you one more minute. Thank you. First, the court has correctly pointed out, fry is where the client doesn't ask and the attorney doesn't tell. Quant is where the client asks and the attorney misrepresents them. Two, in the excerpt of the record, 22, it's pretty clear that what the other attorney stated, he said, I believe the amended charge, the defendant was not under the impression, based upon my advice, there'd be any penalties, there'd not be any for owning firearms, to which he was pleading. So that would be the second issue. And the third thing was, in the excerpt of the record, number 10, it was based upon, 9 and 10, is that we filed our motion to withdraw. The guilty plea that is in there, the court appoints an authority through the item of counsel, and the state court ruled specifically, this court finds the defendant's plea was not freely and voluntarily entered, and then granted the motion to withdraw. So we met both parts of the Strickland test. This was, in fact, a conviction that has, in fact, been modified by statute like no other conviction under that section, was the failure to have a competent attorney is the equivalent of having no attorney. And we thank you. Thank you. I think we have your arguments well in mind. I appreciate your appearance by telephone. I'm glad that you finished your trial, and thank both counsel for your arguments this morning. The case of United States v. Epps is submitted. United States v. Salinas is submitted on the briefs, so the next case for argument will be R.K. v. Hayward Unified School District. Thank you.
judges: Siler McKeown, Bea